UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

KEN MILLER, et al.,

          Plaintiffs,

    v.

CEVA LOGISTICS USA, INC., et al.,

          Defendants.

No.  2:13-cv-01321-TLN-CKD

**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFYING THE SETTLEMENT CLASS, AND PROVIDING FOR NOTICE TO THE SETTLEMENT CLASS**

Plaintiffs Ken Miller, Jeremie Todd, and Christopher Franklin ("Plaintiffs") brought a class action on behalf of a class of drivers who were or are employed by Defendants ADECCO USA, Inc. ("ADECCO") and CEVA LOGISTICS U.S., INC. ("CEVA") ("Defendants"). (Complaint, ECF No. 2-1 at ¶1.)  CEVA provides transportation services and employs truck drivers to transport materials for its customers to and from certain destinations.  (ECF No. 32 at 6.)  ADECCO is an employment agency company.  (ECF No. 32 at 6.)

Plaintiffs allege that Defendants: (1) failed to pay wages in violation of Labor Code §§510, 1194(a), 1174 and 1197; (2) failed to provide meal and rest periods in violation of Labor Code §§226.7 and 512; (3) failed to timely pay wages in violation of Labor Code §§201-204; (4) failed to provide accurate itemized statements in violation of Labor Code §226; (5) violated Business and Professions Code §17200 et seq. with unlawful, unfair, and fraudulent business

1

practices; and (6) violated Labor Code §2698 et seq.  (*See* ECF No. 2-1.)

Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement on September 26, 2014.  (ECF No. 32.)  The motion is unopposed.  Plaintiffs' motion requests that this Court order the following: (1) grant preliminary approval of the class action settlement; (2) approve a form and method of service of notice to the class; (3) establish a procedure for members of the class to object, opt-out, and submit a claim form to participate in the settlement proceeds; and (4) schedule a hearing for final approval of the settlement.  For the reasons set forth below, the motion is GRANTED.

## I.    Background

On May 22, 2013, Plaintiffs filed a class action complaint against Defendants.  (ECF No. 2-1.)  The Complaint alleges six causes of action for violations of Labor Code §§ 201-204, 226, 226.7, 510, 512, 1194(a), 1197 and Business and Professions Code §17200 et seq.  (*See* ECF No. 2-1.)  Defendant removed the case to the United States District Court for the Eastern District of California.[1]

The parties have agreed to settle the above-entitled action on a class-wide basis.  (Notice of Settlement, ECF No. 31.)  Following the filing of the Complaint, the Parties exchanged discovery and engaged in protracted litigation on substantive issues, reviewed and analyzed documents and records of class members, and obtained additional data and information to calculate damages.  (ECF No. 32 at 6.)  On August 7, 2014, the parties attended mediation with Judge Richard Silver (Ret.).  (ECF No. 32 at 6.)  At the end of the mediation, Judge Silver provided the Parties with a mediator's proposal, which all Parties accepted.  (ECF No. 32 at 6.)

The specific terms of the settlement agreement are set forth in a duly executed Stipulation of Settlement and these terms are addressed in Plaintiff's Motion for Preliminary Approval of Class Action.  (ECF No. 31 at 2.)  Plaintiff has filed an unopposed Motion for Preliminary Approval of Class Action Settlement.  (ECF No. 32.)

## II.    Summary of the Settlement

In Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Plaintiffs

---

[1] Case Number 39-2013-00297384-CU-OE-STK.

explain that Defendants shall pay a sum equal to $2,600,000.00 (the "Maximum Settlement Amount") to fund the settlement payments to the class members, administration of the settlement and payment of an Enhancement Award and attorney's fees and costs.  (ECF No. 32 at 7.)  CEVA will contribute $2,500,000 toward the Maximum Settlement Amount and ADECCO will contribute $100,000.  (ECF No. 32 at 7.)  The expected maximum Net Settlement Amount is estimated to be $1,620,000.[2]  Each class member will be able to submit a Claim Form.  Only the class members who submit a valid and timely Claim Form will receive payment, unless agreed otherwise by the parties.  (ECF No. 32 at 8.)  The Claims Administrator will divide the Net Settlement Amount by the total number of Compensable Work Weeks worked during the Class Period by the class members who submit a valid and timely claim form; this calculation will yield the "Dollar Value" per Compensable Work Week.  (ECF No. 32 at 7.)  A class member's individual claim amount will be calculated by multiplying the Dollar Value per Compensable Work Week by the total number of Compensable Work Weeks that the class member worked. (ECF No. 32 at 7.)

At the time of final approval, each of the representative Plaintiffs will request that the Court approve an enhancement of $15,000 each for acting as the class representatives.  (ECF No. 32 at 8.)  Furthermore, at the time of final approval, Westrup & Associates ("Class Counsel") will request attorneys' fees in the amount of $865,000.00 and costs incurred, not to exceed $50,000.00.  (ECF No. 32 at 8.)

### III.   Approval Process

A settlement of class litigation must be reviewed and approved by the court.  Fed. Rule of Civ. Proc. 23(e).  This approval process is done in three stages:

> First, the parties present a proposed settlement to the court for so-called "preliminary approval."  If a class has not yet been certified, typically the parties will simultaneously ask the court to "conditionally" certify a settlement class.

> Second, if the court does preliminarily approve the settlement (and conditionally

---

[2] The Net Settlement Amount of $1,620,000 is calculated as the Maximum Settlement Amount ($2,600,000) - Cost of administration of the settlement ($20,000) - $15,000 for each of the three class representatives for an enhancement ($45,000) – Attorneys' fees ($865,000) – Costs ($50,000).

certify the class), notice is sent to the class describing the terms of the proposed settlement, class members are given an opportunity to object or, in Rule 23(b)(3) class actions, to opt out of the settlement, and the court holds a fairness hearing at which class members may appear and support or object to the settlement.

Third, taking account of all of the information learned during that process, the court decides whether or not to give "final approval" to the settlement. As the parties may also have moved for class certification at this point in the litigation, final approval can also encompass a decision certifying the class.

Newberg on Class Actions, § 13:10 (5th ed. 2014).  During the preliminary evaluation the court is to examine the submitted materials and determine whether the proposed settlement terms seem fair.  *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981).  Some courts will hold a preliminary approval hearing, while others do not.  *Custom Led, LLC v. eBay, Inc.*, 2013 WL 4552789, *1 (N.D. Cal. 2013).  Given the parties' briefings and the absence of objection, the Court finds the motion is suitable for determination without oral argument.

## IV.   <u>Provisional Class Certification</u>

In their motion, Plaintiffs request that the Court certify the class for settlement purposes. (ECF No. 32 at 14.)  FRCP 23(c)(1) permits a court to "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date."  *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000) (citing *Collier v. Montgomery County Housing Authority,* 192 F.R.D. 176, 181 (E.D. Pa. 2000)).  In order to do so, the prerequisites of FRCP 23(a) and (b) must first be satisfied.

1. <u>FRCP 23(a) Requirements</u>

The four requirements of FRCP Rule 23(a) are presented as the following:

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

The Court will address each prerequisite individually.

a. *FRCP 23(a)(1) Numerosity*

The numerosity requirement is satisfied if the class is so large that joinder of all members would be impracticable.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Although the numerosity requirement does not focus exclusively on the number of members in the potential class, case law does suggest that very large numbers may be considered impracticable.[3]

Here, the Plaintiff Class is defined as: "All persons who, at any time after four (4) years prior to the filing of this action through the date of trial, are or were employed as drivers by Defendants in California."  (ECF No. 2-1 at ¶ 14.)  There are approximately 450 Class Members.  (Westrup Decl., ECF No. 32-2 ¶4.)  The joinder of approximately 450 individuals to hear their claims would overburden the Court's docket and be impracticable.  Therefore, the numerosity requirement is satisfied.

b. *FRCP 23(a)(2) Commonality*

The second prerequisite for class certification is that there must be a common question of law or fact to the class.  Fed. R. Civ. P. 23(a)(2).  The class members must share a "common contention of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011).  The commonality requirement is generally satisfied where "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members."  *LaDuke v. Nelson,* 762 F.2d 1318, 1332 (9th Cir. 1985) (*citing Armstrong v. Davis*, 275 F.3d 849, 884 (9th Cir. 2001)).  Furthermore, commonality is met where class members "have suffered the same injury."  *See Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551.

In the Complaint, Plaintiffs contend that Defendants violated various Labor Code sections and Business and Professions Code sections by failing to pay wages, failing to provide meal and rest periods, failing to timely pay wages, and failing to provide accurate itemized

---

[3] The courts provide no strict number, but when a class is very large joinder is typically impracticable.  *See Gen. Tel. Co. of the NW. v. EEOC*, 446 U.S. 318, 330 (1980) (suggesting 15 is too few); *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 357 (3d Cir. 2013) (presuming numerosity at 40); *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (same).

statements.  (ECF No. 2-1.)  These alleged practices and policies apply class-wide.  Furthermore, the Plaintiffs allege that the conduct at issue here injured all class members in the exact same way.  Thus, the commonality requirement is met.

c.   *FRCP 23(a)(3) Typicality*

The typicality prerequisite of FRCP 23(a) is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed.R.Civ.P. 23(a)(3).  Representative claims "are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Here the class representatives, as fellow truck drivers, allegedly endured the same exposure to Defendants' conduct and experienced the same consequences.  The representative Plaintiffs share the same claims and the "same interest" as the class members, as well as suffered the "same injury."  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982).  Therefore, typicality is met.

d.   *FRCP 23(a)(4) Adequacy*

The final prerequisite under FRCP 23(a) is that the representative parties must be able to fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(4).  To make this determination, the Ninth Circuit proposed two questions for a court to ask: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Here, Plaintiffs maintain that there is no conflict of interest and the Court is unaware of any evidence that would suggest otherwise.  Essentially each Plaintiff has the same claim.  Additionally, there is no evidence that the representative Plaintiffs and their counsel will not prosecute the action vigorously.  There is evidence that Plaintiffs' counsel is competent given their substantial experience in prosecuting complex litigation and class action lawsuits.  (Westrup Decl., ECF No. 32-2 ¶¶ 13–15.)  Therefore, the final prerequisite of FRCP 23(a) is met.

6

2.   FRCP 23(b) Requirements

In addition to meeting all of the four prerequisites of 23(a), a class action must also meet one of three requirements under FRCP 23 (b)(1), (b)(2), or (b)(3). *Blake v. Arnett*, 663 F.2d 906, 912 (1981).  Plaintiffs seek class certification pursuant to FRCP 23(b)(3) which states:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

*a. Predominance of Common Questions*

The Rule 23(b)(3) predominance test assesses whether proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  A court should look to the common questions because "when common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

Here, each class member was allegedly subjected to the same failure to pay wages, failure to provide meal and rest periods, and other such conduct by Defendant.  Therefore, the common question here is whether Defendants did in fact violate the various Labor Code sections and Business and Professions Code sections, as Plaintiffs allege.  Plaintiffs are claiming a common practice and conduct by Defendant.  Therefore, the common questions that the class members share here are a significant aspect of the case and can be resolved in a single adjudication. Therefore, the first portion of Rule 23(b)(3) is met.

*b. Superiority of Class Action*

Resolution of the claims of approximately 450 Class Members in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. Therefore, this portion of FRCP 23(b)(3) is satisfied.

/ / /

1

## V.   Preliminary Approval of Settlement

2      FRCP 23(e) provides that "[a] class action shall not be dismissed or compromised

3   without the approval of the court . . . "  Fed.R.Civ.P. 23(e)(2003).  The purpose of preliminary

4   evaluation of proposed class action settlements is to determine whether the settlement is within

5   the "range of reasonableness."  4 Newberg § 11.26.  In reviewing a settlement, it is not a court's

6   province to "reach any ultimate conclusions on the contested issues of fact and law which

7   underlie the merits of the dispute. . . ."  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291

8   (9th Cir. 1992).  Instead a court should weigh the following factors: the strength of plaintiff's

9   case; the risk, expense, complexity, and likely duration of further litigation; the stage of the

10  proceedings, and the value of the settlement offer.  *Collins v. Cargill Meat Solutions Corp.*, 274

11  F.R.D. 294, 301 (E.D. Cal. 2011).  Given that some of these factors cannot be fully assessed until

12  the Court conducts the final approval hearing, "a full fairness analysis is unnecessary at this

13  stage."  *See Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 324 (N.D. Cal. 2013) (citing *Alberto v.*

14  *GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008)).

15     Preliminary approval of a settlement and notice to the proposed class is appropriate: "[i]f

16  [1] the proposed settlement appears to be the product of serious, informed, noncollusive

17  negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment

18  to class representatives or segments of the class, and [4] falls with the range of possible approval.

19  . . ."  *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 301–02 (E.D. Cal. 2011 (citing *In*

20  *re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

21     *a.  The Settlement was the Product of Informed, Arm's Length Negotiations*

22     The settlement herein was reached after the Parties exchanged discovery and engaged in

23  protracted litigation on substantive issues, reviewed and analyzed documents and records of class

24  members, interviewed class members, and obtained additional data and information to calculate

25  damages.  (ECF No. 32 at 12.)  In addition, the Parties consulted with experts and participated in

26  a full-day mediation with a retired Judge.  (ECF No. 32 at 12.)  As a result, the Parties likely had

27  sufficient information to make an informed decision about the terms of the settlement.

28  Therefore, for purposes of preliminary approval, the Court is satisfied that the Settlement was the

8

product of informed and arm's length negotiations.

      *b.   The Proposed Settlement Has No "Obvious Deficiencies"*

      The Settlement provides for a Maximum Settlement Amount of $2,600,000 which will fund the payments to the Class Members, administration of the settlement and payment of an Enhancement Award and attorney's fees and costs.  The amount remaining after deducting the attorney fees and costs, claims administration costs, and Class Representative Enhancement Award, will be the Net Settlement Amount.  (ECF No. 32 at 7.)  The Claims Administrator will then divide this amount by the total number of compensable work weeks worked during the class period by the class members who submit a valid and timely claim form.  (ECF No. 32 at 7.)  This will constitute the Dollar Value per compensable work week.  Each class member's individual claim amount will be calculated by multiplying the Dollar Value per compensable work week by the total number of compensable work weeks worked by the individual class member who submits a claim form.  (ECF No. 32 at 7.)  The Court finds no obvious deficiencies in the proposed method of apportioning the award to the class members.

      Furthermore, the Court finds no obvious deficiencies with the Class Representative payments of $15,000 each for acting as the class representatives.  The Class Counsel attorneys' fees of $865,000 and costs incurred not to exceed $50,000, also seem appropriate, and are subject to court approval at the final approval hearing.

      *c.   The Settlement does not improperly grant preferential treatment to class representatives or segments of the class*

      There is nothing to suggest that the settlement improperly grants preferential treatment to class representatives or segments of the class.  As explained above, the amount remaining, after attorney's fees, costs and the enhancement awards are deducted, will be divided among the class members, who submitted their Claim Forms, based on the number of compensable work weeks they worked.

      As for the Enhancement Awards, they also appear to be appropriate.  Enhancement Awards are common in class actions and are intended to compensate class representatives for their time and efforts.  Therefore, this is not preferential treatment of the class representatives,

1   but rather just providing them an award for performing a civic duty.

2          d.   *The Settlement Falls Well Within the Range of Possible Approval*

3          In order to determine whether a settlement falls well within the range of possible approval,

4   a court must focus on "substantive fairness and adequacy" and "consider plaintiffs' expected

5   recovery balanced against the value of the settlement offer." *Collins v. Cargill Meat Solutions*

6   *Corp.*, 274 F.R.D. 294, 302 (E.D. Cal. 2011) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp.

7   2d 1078, 1080 (N.D. Cal. 2007).

8          Plaintiffs have informed the Court that Defendants provided Plaintiffs with records to

9   assess Defendants' exposure.  (ECF No. 32 at 11.)  Upon receipt of these records, Plaintiffs

10  concluded that Defendants' potential exposure for failure to pay wages for non-drive time work

11  activity is approximately $750,000 (without interest and penalties).  (ECF No. 32 at 11.)

12  Furthermore, Defendants' potential exposure for failure to pay the premium wage for missed

13  meal periods is approximately $1,425,000 (without interest and penalties) for two and a half

14  meal period violations per work week.  (ECF No. 32 at 11.)  As for Defendants' aggregate

15  exposure for failure to pay wages and failure to provide meal periods, if Plaintiffs prevail on

16  class certification, this will amount to $2,175,000 (without interest and penalties.)  (ECF No. 32

17  at 12.)  As for the Maximum Settlement Amount, this was calculated at $2,600,000.  Plaintiffs

18  provide that the settlement amount is a compromise figure.  (ECF No. 32 at 10.)  Plaintiffs took

19  into account Defendants' potential liability, possible damages, and the strengths and weaknesses

20  of the defenses.  (ECF No. 32 at 10.)

21         If further litigation were to occur here, both parties would face significant risks.  The

22  parties would be required to expend considerable time and resources which would potentially

23  outweigh any additional recovery Plaintiffs may receive or any potential minimized costs for

24  Defendants that could result from successful litigation.  In light of this uncertainty, the proposed

25  settlement is fair, reasonable and adequate, and is in the best interest of the Class Members in

26  light of the facts and circumstances provided.

27  / / /

28  / / /

## VI.    Approval of Notice Program

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).  "When the parties reach a settlement agreement before a class determination and seek to stipulate that the settlement will have class-wide scope, a class notice must be sent to provide absent class members with certain basic information so that they have an opportunity to consider the terms of the settlement."  *See* Newberg on Class Actions (4th Ed. 2002) §11.30.

For classes certified under FRCP 23(b)(3), the Court must direct to class members "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed.R.Civ.P. 23(c)(2)(B).  Pursuant to FRCP 23(c)(2)(B), the notice must clearly and concisely state as follows:

> **(i)** the nature of the action;
> **(ii)** the definition of the class certified;
> **(iii)** the class claims, issues, or defenses;
> **(iv)** that a class member may enter an appearance through an attorney if the member so desires;
> **(v)** that the court will exclude from the class any member who requests exclusion;
> **(vi)** the time and manner for requesting exclusion; and
> **(vii)** the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the Notice of Class Action Settlement clearly lays out what the case is about, the class definition and what the proposed settlement is (including the Maximum Settlement Amount, the proposed Enhancement Awards for the Class Representatives, as well as the attorney fees and costs).  (ECF No. 32-4.)  Furthermore, the Notice states what options an individual has, including what they must do to collect money, request exclusion from the settlement, or object to the settlement.  (ECF No. 32-4.)  The Notice also provides the address and phone number of class counsel.  (ECF  No. 32-4 at 4.)  The Court is satisfied that the requirements of FRCP 23(c)(2)(B) are met.

As for the method of notice, the parties have agreed to use a third party Administrator to handle the administration procedures.  (ECF No. 32 at 13.)  California authority generally

requires service of class notice by mail or similar reliable means.  *See Chance v. Superior Court*, 58 Cal. 2d 275, 290 (1962).  The procedure must be reasonably certain to reach class members. *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 319 (1950).  Here, the Administrator will conduct a National Change of Address ("NCOA") search to locate the most current addresses of the Class Members.  (ECF No. 32 at 13.)  For any Notice that comes back with a new address, the Administrator will re-mail the Notice to that Class Member.  (ECF No. 32 at 13.)  For any Notice that comes back as "undeliverable," the Administrator will conduct a "skip trace" and re-mail the Notice to the newly obtained address.  (ECF No. 32 at 13.)  The Court finds this method of notice to be reasonable and therefore approves.

**VII.    Conclusion**

For all the reasons set forth above the Court orders as follows:

1.   The Settlement Class is provisionally certified for settlement purposes;

2.   The Class Settlement is within the "range of reasonableness" and therefore preliminarily approved;

3.   The Court confirms the following persons as the class representatives: Ken Miller, Jeremie Todd, and Christopher Franklin;

4.   The Court appoints R. Duane Westrup of Westrup & Associates as Class Counsel for settlement purposes only;

5.   The Court confirms that Rust Consulting  is appointed as the Claims Administrator;

6.   Parties are hereby ordered to meet and confer as to possible dates for the final fairness hearing and file with the Court a proposed date within 30 days of the entry of this Order.  Upon the Court's approval of such date, the parties will submit an updated Notice of Class Action Settlement to the Court for final approval.  With submission of the Notice of Class Action Settlement the parties will file an updated Implementation Schedule for all other applicable further proceedings, including Motions for attorney's fees.

7.   The Court orders the parties to file briefings on whether the parties provided

12

1    notice to the Attorney General pursuant to 28 U.S.C.A. § 1715.

2

3         IT IS SO ORDERED

4    Dated:  February 18, 2015

5

6                                         _____

7                                         Troy L. Nunley
                                          United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13