UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILLER et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>CEVA LOGISTICS USA, INC., et al.,<br><br>  Defendants. | No. 2:13-cv-01321-TLN-CKD<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

This matter is before the Court on the unopposed motion by Plaintiffs Ken Miller, Jeremie Todd, and Christopher Franklin ("Plaintiffs") for final approval of settlement. (ECF No. 38.) The Court held a hearing on this matter on June 18, 2015. For the following reasons, Plaintiffs' motion is GRANTED.

**I.    BACKGROUND**

    **a.  Summary of Litigation to Date**

Plaintiffs brought a class action on behalf of a class of drivers who were or are employed by Defendants Adecco USA, Inc. ("Adecco") and CEVA Logistics U.S., INC. ("CEVA") ("Defendants"). (Complaint, ECF No. 2-1 at ¶1.) CEVA provides transportation services and employs truck drivers to transport materials for its customers to and from certain destinations. (ECF No. 32 at 6.) Adecco is an employment agency company. (ECF No. 32 at 6.)

Plaintiffs allege that Defendants: (1) failed to pay wages in violation of Labor Code §§510, 1194(a), 1174 and 1197; (2) failed to provide meal and rest periods in violation of Labor Code §§226.7 and 512; (3) failed to timely pay wages in violation of Labor Code §§201-204; (4) failed to provide accurate itemized statements in violation of Labor Code §226; (5) violated Business and Professions Code §17200 et seq. with unlawful, unfair, and fraudulent business practices; and (6) violated Labor Code §2698 et seq. (*See* ECF No. 2-1.)

The parties reached a settlement on September 26, 2014. (ECF No. 31.) Plaintiffs then filed a Motion for Preliminary Approval of Class Action Settlement on September 26, 2014. (ECF No. 32.) By this Court's Order, dated February 19, 2015, this Court preliminarily approved the settlement and provisionally certified the Settlement Class. (ECF No. 35.)

The Notice of the Proposed Settlement was sent to each Settlement Class Member. (ECF No. 38 at 9.) The objection, opt-out and claim submission period closed on May 7, 2015. (ECF No. 38 at 2.) On June 18, 2015, the Court held a final settlement hearing. At that time, the Court approved the settlement.

### b. Material Terms of the Settlement Agreement

#### i. Composition of Settlement Class

Consistent with the definitions provided in the Agreement, the term Settlement Class Members shall include the following: "All persons (1) who at any time between May 23, 2009 through August 8, 2014, were CEVA truck driver employees and/or Agency Truck Drivers for CEVA in the State of California at the following locations: America Honda –Torrance, CA; America Honda –French Camp, CA; Mercedes Benz –Fontana, CA; Volkswagen-DDS-Ontario, CA; BMW Stockton –DDS; or (2) who at any time between May 23, 2009 through August 8, 2014, were employed by Adecco as truck drivers and assigned to work at CEVA at the following locations: America Honda –Torrance, CA; America Honda –French Camp, CA; Mercedes Benz –Fontana, CA; Volkswagen-DDS-Ontario, CA; BMW Stockton –DDS. ["Agency Truck Drivers" shall include truck drivers employed by Adecco, Centerline, Staffmark, Transforce, Select, or Trillium while working at CEVA during the Class Period]." The "Class" and "Class Members" includes those who failed to exclude themselves from the terms of the Settlement. Plaintiffs state

in their Motion for Final Approval that there are 373 Settlement Class Members.  (ECF No. 38 at 5.)

### ii. Settlement Amount

The parties have agreed to a Maximum Settlement Amount of $2,600,000.00.  (ECF No 38 at 5.)  Pursuant to the terms of the Agreement, Class Counsel fees amount to $865,000, with costs of $15,500 to be paid from the Maximum Settlement Amount.  The Maximum Settlement Amount also includes payment to each Named Plaintiff as Class Representatives in the amount of $15,000 (for a total of $45,000).  Finally, this Maximum Settlement Amount also includes $14,500 to be paid to the Claims Administrator, Rust Consulting, Inc.

### iii. Scope of Release

As of the date of this Final Approval Order and Judgment and the effective date as set forth in the Agreement ("Effective Date"), all Released Claims of each Settlement Class Member are and shall be deemed to be conclusively released as against the Released Parties.  The Released Claims shall mean any and all past and present claims, administrative or otherwise, actions, causes of action, rights or liabilities, based on, arising out of, or relating or pertaining to the claims and allegations as set forth in the Complaint during the time periods covered by the settlement, including but not limited to penalties under Labor Code sections 203, 204, 226, 226.3, 558, 1174.5, 1194.2, and 1197.1, and penalties under the applicable Wage Order, attorney fees, and claims for unfair competition pursuant to the California  Business & Professions Code § 17200, et seq., except workers compensation claims (the "Released Claims").  Specifically excluded from the Released Claims are the claims and allegations asserted by Christopher Franklin, in the case entitled *Franklin v. CEVA Logistics U.S. Inc*., Case No. 13-CV-01144-WBS-DAD.

As provided in the Settlement Agreement, each Named Plaintiff and Settlement Class Member, upon the Effective Date, shall be deemed to have and by operation of the Final Judgment shall have fully, finally, and forever settled and released any and all of the Released Claims against Released Parties.  With respect to the Released Claims, the Named Plaintiffs and Settlement Class Members, including the Parties, stipulate and agree that, upon the Effective

1  Date, the Named Plaintiffs and Settlement Class Members shall be deemed to have, and by

2  operation of the Final Judgment shall have, expressly waived and relinquished, to the fullest

3  extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil

4  Code as to the Released Claims against Released Parties.  Thus, subject to and in accordance with

5  the provisions of this Agreement, even if the Named Plaintiffs and Settlement Class Members

6  may hereafter discover facts in addition to or different from those which they now know or

7  believe to be true with respect to the subject matter of the Released Claims, each Named Plaintiff

8  and Settlement Class Member, upon the Effective Date, shall be deemed to have and by operation

9  of the Final Judgment shall have fully, finally, and forever settled and released any and all of the

10  Released Claims against Released Parties.

### iv.  Class Action Fairness Act Notice

As required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b), the parties must submit notice to the relevant state and federal officials.  The parties stipulated that Defendant, Adecco USA, Inc. provided notice of the Settlement to the Attorney General's Office on October 8, 2014 and Defendant, CEVA Logistics U.S., Inc. provided notice to the Attorney General's Office on February 20, 2015.  (ECF No. 36. at 2.)  More than 90 days have passed since the submission of notice, therefore an order giving final approval of the proposed settlement may now be issued.  28 U.S.C. § 1715(d).  The Court finds that the CAFA requirements have been met.

### STANDARD RE: FINAL APPROVAL OF CLASS ACTION SETTLEMENT

A settlement of class litigation must be reviewed and approved by the court.  Fed. Rule of Civ. Proc. 23(e).  This approval process is done in three stages:

> First, the parties present a proposed settlement to the court for so-called "preliminary approval."  If a class has not yet been certified, typically the parties will simultaneously ask the court to "conditionally" certify a settlement class.
>
> Second, if the court does preliminarily approve the settlement (and conditionally certify the class), notice is sent to the class describing the terms of the proposed settlement, class members are given an opportunity to object or, in Rule 23(b)(3) class actions, to opt out of the settlement, and the court

4

> holds a fairness hearing at which class members may appear and support or object to the settlement.
>
> Third, taking account of all of the information learned during that process, the court decides whether or not to give "final approval" to the settlement. As the parties may also have moved for class certification at this point in the litigation, final approval can also encompass a decision certifying the class.

Newberg on Class Actions, § 13:10 (5th ed. 2014).

Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). A strong judicial policy favors settlement of class actions. *Id.*

When considering final approval of a class action settlement, the Court must evaluate whether the settlement is "fair, adequate and reasonable." Fed. Rule of Civ. Proc. Rule 23(e)(2), *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Neither district courts nor appellate courts have the power to delete, modify, or substitute provisions in the negotiated settlement agreement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "The settlement must stand or fall in its entirety." *Id.*

In order to approve the class action settlement herein, the Court must conduct a three-step inquiry. First, the Court will determine that the prerequisites of FRCP Rule 23(a) and Rule 23(b) have been met. Second, the Court will decide whether the notice requirements of Federal Rule of Civil Procedure 23(c)(2)(B)(3) have been satisfied. Finally, the Court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(3).

## II.  ANALYSIS

### a. Rule 23

#### i. Rule 23 (a) and (b)

The Court previously determined that the prerequisites of FRCP Rule 23(a) and Rule 23(b) have already been met (ECF No. 35), so there is no need for the Court to repeat the analysis here. *See, e.g., Harris v. Vector Marketing,* No. C–08–5198, 2012 WL 381202 at *3, at *7 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it previously certified ... a Rule 23(b)(3) class ... [and thus] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable");

*In re Apollo Group Inc. Securities Litigation,* Nos. CV 04–2147–PHX–JAT, CV 04–2204–PHX–JAT, CV 04–2334–PHX–JAT, 2012 WL 1378677 at *4 (D. Ariz. Apr. 20, 2012) ("The Court has previously certified, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and hereby reconfirms its order certifying a class").

### ii. Rule 23(c)(2) Notice Requirements

Class actions brought under FRCP Rule 23(b)(3) must satisfy the notice provisions of FRCP Rule 23(c)(2). The Court previously found the method of notice to be reasonable. (ECF No. 35). The Court finds no reason to revisit its earlier determination that notice to the settlement class was proper.

### b. Assessing whether the Class Settlement is Fair, Reasonable, and Adequate under Rule 23(e)

In assessing whether a settlement is fair, adequate and reasonable to all, the Court must balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993), *quoting Officers for Justice,* 688 F.2d 615, 625 (9th Cir. 1982).

### i. Strength of Plaintiffs' Case

The first factor addresses the strength of Plaintiffs' case. When assessing the strength of a plaintiff's case, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation." *In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 720 F.Supp. 1379, 1388 (D.Arizona 1989). Instead, the court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id.* The Court's assessment of the likelihood of success is "nothing more than an 'amalgam of delicate balancing, gross

approximations and rough justice.'" *Officers for Justice v. Civil Service Comm'n of City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)(citation omitted).

Plaintiffs contend that they were confident that a Motion for Class Certification would be granted because the evidence reveals that Defendants' break and compensation policies were uniform as to all Class Members.  (ECF No. 38 at 3.)  Plaintiffs further assert that they believe they would prevail on liability as Defendants' meal period policy and practice did not comply with the law as clarified by *Brinker v. Sup. Ct.,* 53 Cal.4th 1004 (2012) and Defendants failed to compensate Class Members for all non-drive time work activity.  (ECF No. 38 at 3.)

Plaintiffs filed a Motion for Final Approval for Class Action Settlement (ECF No. 38), which remains unopposed by Defendants.  The likelihood of class decertification is extremely small here given Defendants' non-opposition.  The Court finds Plaintiffs' case to be sufficiently strong to support the implementation of the settlement agreement.

## ii.   Risk, Expense, Complexity, and Likely Duration of Further Litigation

The second factor involves the risk, expense, complexity, and likely duration of further litigation.  Avoiding expenditure of resources and time that would most likely result from additional litigation would benefit both the parties and the Court.  *See In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 228 F.R.D. 541, 565 (S.D. Tex. 2005).  "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Plaintiffs explain that the parties anticipate further protracted litigation on liability and certification. (ECF No. 38 at 4.)  Given the length, complexity, and number of issues involved in both class certification and at trial, it is possible the case would not be certified and/or a jury may not reach a unanimous verdict on all issues.  Furthermore, even if the jury did reach unanimous verdicts, an appeal is likely.  Avoiding a possible negative ruling as to certification, trial and subsequent appeals in this case strongly weighs in favor of settlement rather than further protracted and uncertain litigation.  The above risks associated with class certification, liability,

and damages were taken into consideration when resolving the case.  (ECF No. 38 at 4, Westrup Decl. ¶7.)

With this settlement, the Settlement Class Members have an opportunity for an immediate, guaranteed payout instead of prolonged litigation which will run the risk of uncertain recovery.  The Court finds these facts to weigh in favor of settlement.  *See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (noting with respect to class action settlements: "[c]ourt shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.")  Taking into consideration the time and costs required for further litigation, the Court finds that this factor weighs in favor of settlement approval.

### iii.  Amount Offered in Settlement

In assessing the amount obtained by the class members in a class action settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *Officers for Justice v. Civil Service Comm'n of City and Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982); *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983)(court may not withhold approval merely because settlement is only a fraction of what a successful plaintiff would have received in a fully litigated case).

Pursuant to the Settlement Agreement, Defendants agreed to pay a total sum of $2,600,000 (the "Maximum Settlement Amount").  CEVA will contribute $2,500,000 and Adecco will contribute $100,000.  There are 373 Settlement Class Members and the average payout is expected to be $8,907.90.  (ECF No. 38 at 5.)

After the parties exchanged discovery and engaged in protracted litigation on substantive issues, they ultimately reached a settlement with the help of an experienced mediator, Judge Silver.  (ECF No. 32 at 6.)  The Court has no reason to believe that the amount offered in settlement, taken as a whole, is unfair.  Therefore, the Court finds this factor to weigh in favor of approval of the settlement.

///

///

### iv. Extent of Discovery Completed and the Stage of the Proceedings

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004). "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Id*. at 527.  The court can look to whether Plaintiffs had "a good grasp on the merits of [their] case before settlement talks began." *Rodriguez*, 563 F.3d at 967; *see also Jaffe v. Morgan Stanley & Co., Inc.*, 2008 WL 346417, at *9 (N.D. Cal. 2008)(finding approval appropriate where parties had engaged in extensive discovery prior to settlement). "[P]ractical considerations obviously require that the evaluation be made on the basis of information available at the time of settlement." *Nelson v. Bennett*, 662 F.Supp. 1324, 1327 n.4 (E.D. Cal. 1987) (quoting the California Supreme Court in *Tech-Bilt, Inc.v. Woodward-Clyde & Associates*, 38 Cal.3d 488, 499, 213 Cal. Rptr. 256 (1985)).

Here, the parties exchanged discovery and engaged in protracted litigation on substantive issues.  (ECF No. 32 at 6.)  Parties also reviewed and analyzed documents and records of class members, and obtained additional data and information to calculate damages.  (ECF No. 32 at 6.)  As additional examples, Plaintiffs "propounded discovery, took depositions of Defendants' corporate designees (i.e., F.R.C.P. 30(b)(6) depositions), examined documents and data, reviewed Class Members' records, interviewed Class Members, consulted with experts, prepared a damage analysis, prepared motions for class certification and summary adjudication, and participated in a full-day mediation with a respected retired Judge."  (ECF No. 38 at 6.)  The settlement appears to have been the result of arms-length negotiations conducted by an experienced mediator. Accordingly, the parties' apparent careful investigation of the claims and their resolution in consideration of the views of an experienced mediator all weigh in favor of approving the settlement.

### v. Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by

competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004).

Here, Class Counsel claims to have extensive experience in class action litigation and their work on the case permitted Class Counsel to thoroughly evaluate the merits of the case. (ECF No. 38 at 7.) Class Counsel has been appointed Class Counsel in over 40 class action cases during the past 5 years. (ECF No. 38 at 7.) Class Counsel provided further qualifications and experiences in the Westrup Declaration. (ECF No. 38-2 at ¶ 12.) Plaintiff's counsel, along with the Class Representatives, all strongly believe that the Settlement is a fair and adequate, and preferable to continued litigation. (ECF No. 38 at 7–8.) Class Counsel's experience and statements both support the Court's final approval of the settlement agreement.

### vi. Presence of Governmental Participant

There is no governmental participant here. Therefore, the Court does not consider this factor.

### vii. Reaction of the Class Members to the Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 529 (C.D. Cal. 2004); *Create-A-Card, Inc. v. Intuit, Inc.,* 2009 WL 3073920, at *15 (N.D.Cal. 2009)(court "may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it"); *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 620 (S.D. Cal. 2004) ("[W]here the objectors represent only a small percentage of the class, the likelihood of the court granting their discovery request decreases because the court will give great weight to the interest of the majority of the class members.") (emphasis added); *Stoetzner v. U.S. Steel Corp.,* 897 F.2d 115, 118-19 (3d Cir. 1990) (finding that 29 objections out of 281-member class "strongly favors settlement").

Here, there are 155 valid claimants who are claiming 42% of the possible Compensable Work Weeks without a single objector or request for exclusion. (ECF No. 38 at 8.) The fact that

not a single class member filed an objection or requested to exclude himself from the settlement weighs in favor of the Court approving the settlement.

### III.     ATTORNEY'S FEES AND COSTS

Pursuant to Federal Rules of Civil Procedure, Rule 23(h), the Court may award reasonable attorneys' fees and nontaxable costs "authorized by law or by agreement of the parties... ." If a negotiated class action settlement includes an award of attorney's fees, that fee award must be evaluated in the overall context of the settlement. *Knisley v. Network Assocs.,* 312 F.3d 1123, 1126 (9th Cir.2002); *Monterrubio,* 291 F.R.D. at 455.  A district court must therefore "carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Staton v. Boeing*, 327 F.3d 939, 963 (9th Cir. 2003).

The Ninth Circuit has approved two methods of assigning attorneys' fees in common fund cases: the "percentage of the fund" method and the "lodestar" method.  *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *In re Wash. Pub. Power Supply Sys. Litig.,* 19 F.3d 1291, 1295–96 (9th Cir.1994)).  The district court has discretion in common fund cases to choose either method.  *Vizcaino,* 290 F.3d at 1047.

In their Motion for final Approval of Class Action Settlement (ECF No. 38), Plaintiffs argue that the Ninth Circuit has repeatedly held that 25 percent of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage method, with 20 to 30 percent as the usual range in common fund cases of $50-200 million.  *Vizcaino*, 290 F.3d at 1047.  This "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors*."  Singer v. Becton Dickinson and Co.,* 2010 WL 2196104(S.D. Cal. 2010) (quoting *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).

Other case law surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded in cases in which the common fund is relatively small.  *See* Newberg on Class Actions (4th 2002) § 14:6.  Small cases tend to have fees above the 25% benchmark in California.  *Craft v. County of San Bernardino,* 624 F.Supp.2d 1113, 1127 (C.D. Cal. 2008) (holding that attorneys'

fees for mega fund cases are typically under the 25% benchmark and cases below $10 million are often more than the 25% benchmark).

California district courts usually award attorneys' fees in the range of 30-40% in wage and hour class actions that result in the recovery of a common fund under $10 million. *See Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (citing to five recent wage and hour cases where federal judges approved fee awards ranging from 30% to 33% and approving percentage of the fund award of 33% to class counsel); *Singer*, 2010 WL 2196104, at *8 (approving attorneys' fees of 33.33% of the common fund and holding this award is similar to awards in three other wage and hour class actions where fees ranged between 33.3% and 40%); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, at *1-4 (E.D. Cal. 2007) (approving award of 33% of common fund).

As of May 2015, Class Counsel has incurred approximately $555,000 in attorneys' fees, and $15,000 in actual out-of-pocket expenses (with an anticipated additional $500 in travel expenses to attend the hearing on final approval) in prosecuting this case on behalf of the Settlement Class. (ECF No. 38 at 11.) Although preliminary approval was granted for attorneys' fees in the amount of $865,000 and costs of up to $50,000, Class Counsel is only asking the Court to approve $865,000 in attorneys' fees and $15,500 in out-of-pocket expenses. (ECF No. 38 at 11.)

Plaintiffs argue that Class Counsel obtained an excellent result for the Settlement Class after years of thorough investigation, litigation, mediation, and finally, negotiation of a settlement. (ECF No. 38 at 11.) Furthermore, Plaintiffs contend that Class Counsel expended a substantial amount of work in the case. (ECF No. 38 at 11.)

A. *Reasonableness of the Percentage*

Here, the requested attorneys' fees are $865,000 which represents approximately 33 1/3% of the $2,600,000 settlement. This falls within the 30-40% range that California district courts usually award in wage and hour class actions that result in the recovery of under $10 million. *See Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482, 491-92 (E.D. Cal. 2010). This is above the suggested 25% in *Vizcaino*, however Plaintiffs argue that other case law provides 50% as the

upper limit.  The Court finds that given the circumstances of the settlement and the benefit obtained for the class these attorneys' fees are reasonable.

      *B.  Lodestar Cross-check*

District courts often use the lodestar method as a cross-check on the percentage method in order to ensure a fair and reasonable result.  *Vizcaino*, 290 F.3d at 1302 (*citing In re Immunex Securities Litigation*, 864 F. Supp. 142, 144 (W.D. Wa. 1994)).  Under the lodestar method, the court determines an appropriate attorneys' fee by multiplying the number of hours class counsel reasonably expended by a reasonable hourly rate.  *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043 (9th Cir.2002).

Here, with a request for fees in the amount of $865,000, Class Counsel is seeking a multiplier of less than 2 (approximately 1.56).  (ECF No. 38.)  Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation.  *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) (*citing Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988).  The multiplier of 1.56 therefore falls within the range of multipliers generally awarded to successful class actions in California.  Furthermore, Defendants have agreed to Plaintiffs' request for fees, and therefore the Court finds no reason to deny these fees and costs.

**IV.    CONCLUSION**

The Court concludes that the proposed settlement is fair, reasonable and adequate and directs the Parties to effectuate the Settlement according to the terms outlined in the Agreement.  The Court further orders that:

    1. The Settlement is HEREBY APPROVED in its entirety;

    2. The members of the Class have been provided with adequate notice of the action and settlement terms;

    3. The members of the Class were given an adequate opportunity to opt out of the action and the settlement;

    3. The Settlement Fund shall be dispersed in accordance with the Settlement Agreement;

    4. Class Representatives Ken Miller, Jeremie Todd and Christopher Franklin are hereby

awarded $15,000 each for their time and efforts;

5. The Court hereby confirms Westrup & Associates as Class Counsel;

6. Class Counsel's attorneys' fees and costs are granted in the amount of $865,000 and $15,500 in out-of-pocket expenses'

7. The Court orders that a Claims Administration Payment in the amount of $14,500 be paid to the Claims Administrator, Rust Consulting, Inc., from the Maximum Settlement Amount for the costs of administration; and

8. Jurisdiction is hereby reserved by this Court to assure compliance with all terms of this settlement, in accordance with the Settlement Agreement and this Final Judgment.

IT IS SO ORDERED.

Dated:  August 7, 2015

_____
Troy L. Nunley
United States District Judge